# IN THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS J. BONASERA Administrator Of the E/O Alaina Nicole Steele, Deceased, | : : : | |
| Plaintiff | : : | Case No.: 2:19-CV-03817 |
| v. | : : | Judge Sargus |
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, *et al*., | : : : | Magistrate Judge Vascura |
| Defendants. | : : | |

## PLAINTIFF THOMAS J. BONASERA ADMINISTRATOR OF THE E/O ALAINA NICOLE STEELE, DECEASED'S MOTION TO COMPEL

Pursuant to Fed. R. Civ. P. 26 and 37, and Local Rule 37.1, Plaintiff Thomas J. Bonasera, Administrator of the Estate of Alaina Nicole Steele, Deceased ("Plaintiff") hereby moves the Court for an Order compelling Defendant New River Electrical Corp. ("New River") to provide documents responsive to Plaintiff's discovery requests and to resume the deposition of New River employee Robert Phillips following complete production of documents. Plaintiff further moves the Court for an Order requiring New River to pay the reasonable costs incurred in seeking this relief, including but not limited to, attorney's fees. A Memorandum in Support is attached.

Plaintiff made a good faith attempt to resolve the discovery conflict stated herein as required by Fed. R. Civ. P. 37 and Local Rule 37.1, but such efforts were unsuccessful and the Plaintiff has exhausted all extrajudicial means for resolving this issue over several months.

Respectfully submitted,

*/s/ Scott E Smith.*
Scott E. Smith (#0003749)
Trial Attorney
ses@sestriallaw.com
Michael L. Dillard, Jr. (#0083907)
mld@sestriallaw.com
**Scott Elliot Smith, L.P.A.**
5003 Horizons Drive, Suite 101
Columbus, OH 43220
Telephone: (614) 846-1700
Facsimile: (614) 486-4987
*Attorneys for Plaintiff*

## MEMORANDUM IN SUPPORT

**I.  INTRODUCTION**

The following is a list of parties to the lawsuit and related parties, and the names of their counsel, if represented and known.

- Plaintiff Thomas J. Bonasera Administrator of the E/O Alaina Nicole Steele, Deceased ("Plaintiff") (represented by Scott Elliot Smith and Michael L. Dillard, Jr., Smith Law Office).
- Defendant Pennsylvania National Mutual Casualty Insurance Company dba Penn National Insurance ("Penn National") (represented by Brandon Abshire, Reminger Co., LPA).
- Defendant W.D. Wright, Contracting Inc. ("W.D. Wright") (represented by Patrick Kasson, Reminger Co., LPA).
- Defendant New River Electrical Corp. ("New River") (represented by Keith Pryatel, Haneline Pryatel Law).
- Wright Brothers, Inc. ("Wright Brothers") (represented by Jordan Strassburger, Strassburger McKenna Gutnick & Gefsky).
- Rebecca Cook (formerly represented by David Goldstein, David A. Goldstein Co LPA).

Alaina Steele was struck and killed by a Jeep while performing flagging duties at a New River worksite in Granville, Ohio. Plaintiff's claims against New River are that New River was negligent and contributed to causing the injuries and death of Alaina Steele through its active participation in Alaina Steele's duties prior to and on the day of the collision. That participation

2

is evidenced by, among other things, telling her where to be each day, when to start and stop work, when she could go on breaks including lunch, where to set up the work zone including setting up the work zone on a dangerous hilly road, actively flagging when Alaina or her partner took bathroom breaks, choosing not to assist the flaggers in setting up and removing signage, demanding using only New River cones for the work zone and where to place them, and choosing not to have additional safety measures in place that would protect the flaggers including arrow boards, shadow vehicles or police present to assist in traffic control. Plaintiff's discovery to New River has largely focused on these safety issues.

There are two categories of relevant documents, identified by witnesses during depositions, which New River refuses to produce. New River also refuses to respond to certain document requests that were combined with Plaintiff's first set of requests for admission sent to New River. New River's refusal in both instances is improper. The two categories of documents sought are relevant to safety, job site safety, decisions made with respect to safety, both implementation and planning, and decisions made during the negotiation phase that relate to New River's choices on traffic control. So too, the document requests submitted in combination with the requests for admission relate to the issues of New River's negligence, Plaintiff's claims, and New River's alleged defenses.

New River's stubborn refusal to provide documents is further evidenced by its refusal to participate in mediation. The Court noticed the parties regarding mediation. The parties, other than New River, agreed to privately mediate the case. New River not only declined to participate in private mediation, but sent a letter to the private mediator improperly demanding that the mediator cancel the mediation unless New River was dismissed from the case with prejudice. (*See* October 21, 2020 Letter from Keith Pryatel to Charles H. Cooper, Esq., attached here to as

3

Exhibit 1). The parties proceeded despite New River's baseless demands and Plaintiff was able to successfully mediate and resolve its claims against Defendant W.D. Wright. However, after successful mediation, New River untimely filed a motion to bring W.D. Wright back into the case further obstructing case efficiency. New River's conduct in refusing to provide documents must be sanctioned, and if it did not retain the documents sought, Plaintiff is entitled to a spoliation finding. For these reasons, and the reasons more fully stated below, Plaintiff requests that the Court grant this Motion, requiring New River to provide the discovery sought herein and to pay the costs associated with bringing this Motion.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

### *Relevant Facts of the Case Against New River*

New River contracted with W.D. Wright to hire flaggers while New River worked on utility/telephone lines running along the utility easement by the road. Decedent Alaina Steele and her niece Samantha Steele comprised a novice two-person flagging team hired by Tiffany Poloschan employed by W.D. Wright. (*See* October 5, 2017 Affidavit of Samantha Steele ("Steele Aff.") (Dkt. # 58-1) at ¶¶ 4-40). On August 3, 2017, W.D. Wright's Tiffany Poloschan sent the Steeles to the job for New River, after the previous flaggers quit, pursuant to a document entitled, "Quote # 17176" issued to New River by W.D. Wright on April 24, 2017.[1] (*See* Steele Aff. at ¶ 44). Ms. Poloschan directed Alaina and Samantha Steele to the New River job yard located at 2030 Timbuk Road, Granville, Ohio 43023 and from there, New River foreman Robert Phillips directed the Steeles to the New River job site located at or near 7229 North State Road (SR 661), Newark, Ohio 43055 (the "New River Jobsite"). (*See* Steele Aff. at ¶ 44).

---

[1] A document bearing Bates No. W.D. Wright Production 000074 and titled, "Quote # 17176," was produced in discovery by W.D. Wright and designated confidential pursuant to the Protective Order.

When the Steeles first arrived at the New River Jobsite, they noticed that New River employees were doing the flagging due to the previous flaggers quitting. (*See* Steele Aff. at ¶ 45). New River's on-site foreman, Robert Phillips, personally chose the worksite location every day that summer, showing the Steeles the electric poles that New River would be working on and instructing them as to the location that they should place the flagger-symbol signs (signs closest to the job site). (*See* Steele Aff. at ¶¶ 47, 62.  *See also* September 17, 2020 Deposition of Robert A. Phillips ("Phillips Dep.") at 70:21 – 71:10, 75:6-13, 103:12-14, 115:1-2 (Dkt # 81-1)).

Every day, the Steeles would place the flagger-symbol signs as instructed by Mr. Phillips, and then place the remaining signs according to their ATSSA certification class taken at W.D. Wright's offices a few weeks earlier. (*See* Steele Aff. at ¶¶ 48-49, 65; Phillips Dep. at 70:21 – 71:10, 75:6-13, 103:12-14, 115:1-2). Mr. Phillips directed the Steeles not to use their own cones, and that New River employees would set out and collect New River's own cones, delineating the lane of travel for vehicles approaching the work zone. New River brought these cones to the job every day for traffic control purposes and collected them every day when the New River employees decided to leave for the day, leaving the Steeles to clear remaining signage from the zone on their own. (*See* Deposition of Samantha Steele ("Steele Dep.") (Dkt. # 57-1), at 33:5 – 34:9; 128:20 – 129:15; 131:9 – 132:25. *See also* Phillips Dep. at 93:4-22, 96:3-8, 97:6-16 (while Mr. Phillips did not remember if they used New River cones at the site in question, he conceded that New River used cones for traffic control and for convenience)). Mr. Phillips told the Steeles when they could take breaks for lunch and how long those breaks could last. (*See* Steele Dep. 175:23 – 176:6). When Alaina or Samantha Steele would need a restroom break, Mr. Phillips would have one of his employees do the flagging with the remaining Steele, or Mr. Phillips would do the flagging himself. (*See* Steele Dep. at 178:9 – 179:25). Mr. Phillips told the Steeles

5

when to start and finish each day. (Steele Dep. at 178:4-8, 181:24-25; Phillips Dep. at 67:2-6).

On August 11, 2017, Mr. Phillips told the Steeles that they would be working until around 1:00 p.m. (*See* Steele Aff. at ⁋ 63). Mr. Phillips directed the Steeles where to set up the New River Jobsite that day on State Route 661, about a mile north of Chestnut Hills Road in Granville, Ohio, on the side of a hill. (*See* Steele Aff. at ⁋ 66). Sometime after noon, Mr. Phillips told the Steeles that work was done for the day and he and his crew collected the cones and left the Steeles at the site to collect signage on their own. He left the Steeles there to fend for themselves with respect to collecting signs on the hilly road that he himself had directed them to work on. (*See id*.). He did so despite recognizing that he and his crew needed the Steeles' assistance with traffic in leaving the area safely. (*See* Phillips Dep. at 117:9-18).



As the Steeles collected the signs, a motorist, Rebecca Cook, negligently failed to maintain a safe

distance and lost control of her Jeep after failing to notice Ms. Steele's truck and flashing white strobe light on top of the pickup truck as she approached the work zone and decline of the hill. Ms. Cook applied her brakes and veered her Jeep toward the ditch on the right side of the road, struck the steep embankment, rolled the Jeep, and struck Alaina Steele after Ms. Steele had run toward the ditch as she was trained. The resulting injuries led to Alaina Steele's death. (*See* Steele Aff. at ¶¶ 69-75, 78-79).



Within weeks of Alaina's death, on August 29, 2017, Plaintiff sent letters of representation to New River (and all suspected defendants and their known insurance companies) at its Virginia headquarters and Ohio location, and to its listed statutory agent for Ohio. (*See* Letters of Rep, attached as Exhibit 2). The letters clearly instructed New River to preserve all evidence, including electronic evidence, related to any of the issues in this case. (*See id*.). On

7

September 8, 2017, Plaintiff sent a similar letter of representation to New River's counsel, Keith Pryatel, who responded to the letter of representation, which again, had demanded preservation of all evidence. (*See* Letters of Rep, attached as Exhibit 3). All Defendants and their counsel including known insurance companies (Defendant Penn National) failed to cooperate and provide the information the Plaintiff sought including the identification of New River's insurance carrier. (*See* Plaintiff's Second Amended Complaint).

### *Plaintiff's Action Against New River and the Court's Prior Decision Show What Discovery is Relevant to Plaintiff's Case*

Defendants' obstructionist pre-suit conduct forced Plaintiff to file suit. Among his other claims, Plaintiff has asserted a wrongful death claim and survival action against New River based on New River's negligence and active participation in the Steele's traffic control duties. (*See* Second Amended Complaint ("SAC") (Dkt. # 37) at ¶¶ 64-80, 85-102, 176-94). This Court's August 24, 2020 Order (Dkt. # 64) ("August 24 Order") denying New River's Motion to Dismiss (Dkt. # 14) is instructive. The Court noted that Plaintiff's main allegations showing New River's liability were: (1) Defendant New River chose not to have a police or escort vehicle; (2) Defendant New River directed Alaina and Samantha Steele's flagging activities; (3) Defendant New River chose to have a two person crew and not to have a sign board or other safety precautions; and (4) Defendant New River failed to ensure a proper temporary traffic control plan was in place. (*See* August 24 Order at pp. 10-11).

This Court has issued a ruling in response to New Rivers Motion to Dismiss holding that New River choice of the specific location to place signage and set up the work zone, proves as alleged, that New River actively participated in at least one of the variables leading to Alaina Steele's death, *i.e.*, the dangerous hilly location of the signs and flaggers on August 11, 2017.

(*See* August 24 Order at pp. 12-13). The allegation in Plaintiff's amended complaint has since proven true through the written discovery responses and depositions of witnesses taken to date. The Court held that evidence showing that New River directed Alaina Steele where flagging should take place proves that New River actively participated and may have played a role in her death. (*See* August 24 Order at p. 14). Evidence demonstrating that New River instructed the Steeles where to place signs on the hilly road is evidence in support of Plaintiff's claims against New River. (*See* August 24 Order at p. 14). As a result, evidence central to Plaintiff's claims against New River are the safety precautions New River took (or failed to take) onsite, the decisions New River made (or failed to make) with respect to directing the Steeles, the decisions New River made on site regarding safety and traffic control, and the decisions New River made regarding safety during the negotiation with W.D. Wright for traffic control services.

### *The Missing Documents are Relevant and Discoverable*

Exhibit 25 to Mr. Phillips' deposition is a document called "New River Electrical Corporation Jobsite Evaluation" (the "Jobsite Evaluation"), which was provided by New River in discovery. (*See* Jobsite Evaluation attached as Exhibit 4). That document revealed <u>five</u> other types of documents related to job site safety and New River's job site safety decision making. Those five types of documents included a Safety Policy Available on Site, daily Job Safety Analysis documents ("JSA" and/or "JHA"), documents recording Weekly Safety Meetings, Weekly Jobsite Inspections, and an Emergency Action Plan. (*See* Phillips Dep. at Exhibit 25, p. 2; Jobsite Evaluation at p. 2). And Mr. Phillips testified that each of these five types of documents exist in either paper or electronic form, and that all were available onsite and most were used. (*See* Phillips Dep. at 79:24 – 88:23). He also testified regarding a sixth missing safety document, a safety plan, filed with ODOT. Mr. Phillips stated that he received and reviewed this

9

safety plan at New River before starting the job. (*See* Phillips Dep. at 151:9 – 152:14). There are no less than fourteen (14) Document Requests that seek the type of information in these six missing documents. (*See* Excerpts of Document Requests and Responses Nos. 5, 6, 7, 17, 18, 19, 23, 29, 32, 34, 35, 36, 41, and 42 (attached hereto as Exhibit 5)). Yet New River has not provided any of these six documents in discovery. In fact, prior to Mr. Phillips' deposition, Plaintiff's counsel expressly requested the Safety Policy Available on Site referenced in the Jobsite Evaluation, but counsel for New River simply refused to provide it. (*See* September 15, 2020 Email exchange between Michael L. Dillard, Jr., Esq. and Keith L. Pryatel, Esq., attached hereto as Exhibit 6). Mr. Phillips' deposition proceeded without the relevant documents due to New River's refusal and was suspended due to the missing documents. Plaintiff has instructed New River that it intends to resume Mr. Phillips' deposition once full and complete documents are provided. (*See* December 30, 2020 letter from Scott Elliott Smith to Keith Pryatel, attached hereto as Exhibit 7).

In addition to the missing six documents discussed above, during her deposition, W.D. Wright employee Tiffany Poloschan testified that she and/or one of two other W.D. Wright employees, Dave Abner and Starr Jones, communicated by email directly with New River employee Ike Poe negotiating the terms of the agreement for traffic control services and products to be used. (*See* October 16, 2020 Deposition of Tiffany L. Poloschan ("Poloschan Dep.") at 52-57, generally (Dkt # 82-1). Plaintiff served no less than nine (9) document requests on New River seeking this type of information. (*See* Exhibit 5 at Nos. 6, 7, 13, 14, 15, 20, 21, 22, and 41). Yet New River has not produced a single email, and it has not produced a single document regarding these communications even though Plaintiff's letter of representation put New River on notice and demanded they preserve evidence that would include the electronic documents,

faxes, letters, etc. that New River has failed to produce.

On October 16, 2020, New River responded to sixty-nine (69) Requests for Admission ("RFAs") that Plaintiff propounded upon New River. In addition to the RFAs, Plaintiff also propounded sixty-nine (69) corresponding Document Requests on New River that asked for documents supporting any denials made by New River. New River denied forty-five (45) of the RFAs outright. New River responded with partial denials to sixteen (16) other requests, meaning New River denied, at least in part, sixty-one (61) of the sixty-nine (69) RFAs. While New River initially failed to answer a single document request, it supplemented its responses on December 31, 2020. (*See* New River Responses attached hereto as Exhibit 8). In that supplement, however, New River did not provide a single new document and gave the same form objection to 61 requests, as follows:

> **Objection. This request calls for the disclosure of privileged attorney/client communications and privileged and confidential attorney work product. Counsel for Defendant New River Electrical Corporation has not directed, sent, or forwarded every document that has been produced in this case to New River Electrical Corporation. To the extent this request seeks the identification of documents known only to counsel for New River Electrical Corporation, it is objectionable and such documents are not being identified in these answers, responses, and objections.**

(*See* New River Response Nos. 1-25, 28-48, 54-60, 62-69).

On December 3, 2020, Plaintiff sent a letter to New River requesting that it provide the six missing documents, the New River emails with Wright, and proper responses to the sixty-nine document requests. (*See* December 3, 2020 Letter from Scott E. Smith, Esq. to Keith Pryatel, Esq., attached hereto as Exhibit 9). New River responded in two communications. The first was on December 23, 2020 when New River sent a letter responding to Plaintiff's request for the six missing documents and the New River emails. (*See* December 23, 2020 Letter from

Keith L. Pryatel, Esq. to Plaintiff's counsel, attached hereto as Exhibit 10). The second response was the December 31 response to the sixty-nine document requests discussed above.

In New River's December 23 letter regarding the six missing documents, New River stated that it would not provide the requested documents, as follows:

- The <u>ODOT filed plan</u>.[2] Mr. Phillips reviewed and had possession of this document, but according to New River, the document was not retained by New River. (December 23 Letter at pp. 1-2).

- The Jobsite Evaluations. These documents were already provided in discovery according to New River's December 23 letter. That is true, which is why Plaintiff's December 3, 2020 letter did not mention or request these documents. New River's statements regarding timing and a prior meet and confer are confusing and irrelevant. New River's response is non-responsive. (*See id*. at p. 2).

- The New River Incident Report. This document was provided according to New River's December 23 letter. Again, that is true, but again, Plaintiff's December 3 letter did not ask for this document, so New River's response is non-responsive. (*See id*. at p. 2).

- The <u>Safety Manual</u>. Plaintiff's December 3 letter did request this document, but New River claims that it is irrelevant because neither Mr. Phillips, nor Alaina Steele ever looked at it. (*See id*. at pp. 2-3).

- The <u>New River emails</u>. These documents were requested, but New River says that it did not retain them. (*See id*. at p. 8).

- The Daily Job Hazard Analysis. If this term used in New River's letter is actually

---

[2] Underlined documents are the ones actually requested by Plaintiff in the December 3, 2020 letter. The other documents referenced by New River and the purported reason for not producing them are entirely non-responsive to Plaintiff's request.

12

- referring to the "daily Job Safety Analysis documents" referred to in the Jobsite Evaluation and by Mr. Phillips during his deposition, then these are documents requested by Plaintiff in the December 3 letter. However, New River says that these documents (if that is what they refer to) were not retained by New River. (*See id*. at p. 8).

- New River also claims that the requested documents are purportedly not discoverable because New River alleges it made no safety choices related to anything as shown by a witness that does not work for New River, and never has. (*See id*. at pp. 3-8).

### III. LAW AND ARGUMENT

#### A. STANDARD

Fed. R. Civ. P. 26 permits "broad discovery in litigation, including 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Litig.*, No. 2:18-MD-2846, 2019 U.S. Dist. LEXIS 13420, at *59 (S.D. Ohio Jan. 28, 2019) (quoting Fed. R. Civ. P. 26(b)). "Relevance for discovery purposes is extremely broad." *Little Hocking Water Assn., Inc. v. E.I. Du Pont De Nemours & Co.*, No. 2:09-cv-1081, 2013 U.S. Dist. LEXIS 22374, at *4 (S.D. Ohio Feb. 19, 2013). "'Relevant evidence' is evidence that 'has any tendency to make a fact more or less probable than it would be without the evidence' and 'the fact is of consequence in determining the action.'" *Wiggins v. Bank of Am., N.A.*, No. 2:19-cv-3223, 2020 U.S. Dist. LEXIS 206523, *5 (S.D. Ohio Nov. 4, 2020) (quoting Fed. R. Evid. 401).

Rule 37 authorizes a motion to compel discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has in good faith conferred or attempted to confer with the party failing to respond to the requests. Fed. R. Civ. P. 37(a). And it permits a motion to compel discovery when a party fails

to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted).

Rule 37(a) expressly provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). The party responding to discovery must conduct a diligent search with a "reasonably comprehensive search strategy." *Casale v. Nationwide Children's Hosp.*, No. 2:11-cv-1124, 2014 U.S. Dist. LEXIS 203502, at *5 (S.D. Ohio June 3, 2014) (quoiting *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). A party must be "careful and thorough," "diligent" and "comprehensive," and has "an obligation to ensure that document searches, when initially made, were careful and thorough." *See Little Hocking*, 2013 U.S. Dist. LEXIS 22374, at *20. Should a party's responses to discovery be evasive or incomplete, the party will be treated as thought it failed to respond. *Lynum v. City of Zanesville*, No. 2:15-cv-2389, 2016 U.S. Dist. LEXIS 112177, at *3 (S.D. Ohio Aug. 23, 2016).

Rule 37(a)(5)(A) provides that "[i]f the motion is granted … the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

    **B.**    **New River Should Be Compelled To Provide The Six Safety Documents, All Negotiation Emails And Documents, Proper Responses To Document Requests, And Resumption Of Robert Phillips' Deposition**

        1.    *New River must provide the six identified safety documents.*

The six *safety* documents identified and discussed by Mr. Phillips are inarguably relevant to Plaintiff's claims against New River for its negligence.

1. Mr. Phillips talked about the "Safety Manual" identified in the Jobsite Evaluation (Exhibit 25 in the Phillips Dep.), and said that document covered safety at the jobsite. (*See* Phillips Dep. at 84:19-22). A main issue relevant in Plaintiff's negligence claims against New River. *See Wiggins*, 2020 U.S. Dist. LEXIS 206523, *5 (quoting Fed. R. Evid. 401).

2. Mr. Phillips testified about the JSA identified in the Jobsite Evaluation. Mr. Phillips stated that he had made judgments and decisions with respect to traffic control in the past. Upon reviewing flaggers' work and work zone set up, he objected to conditions when he viewed them as unsafe, telling flaggers that they "need more help, or need more signs, or whatever." (*See* Phillips Dep. at 60:16 – 61:12). Mr. Phillips said he would prepare a job safety analysis ("JSA") every day, and one of the issues covered in that JSA was job site roadway traffic. (*See* Phillips Dep. at 66:20 – 69:8). That information is inarguably relevant to Plaintiff's case against New River. *See Wiggins*, *supra*.

3. Mr. Phillips stated that he held and documented weekly safety meetings as set forth in the Jobsite Evaluation. (*See* Phillips Dep. at 86:13 – 87:14). After holding these meetings every Monday morning, Mr. Phillips filled out a three to ten-page form and submitted it to New River electronically. The topic and reason for the form was jobsite safety. (*See id.*). That is a topic relevant to the claims against New River. *See Wiggins*, *supra*.

4. Mr. Phillips confirmed that there was a documented jobsite inspection, which he completed every week using a form on his iPad. (*See* Phillips Dep. at 87:25 – 88:7). While not entirely clear what the inspection encompassed, the conditions at the jobsite and the findings of investigations related to those conditions is inarguably relevant to whether New River was negligent. *See Wiggins*, *supra*.

5. Mr. Phillips talked about the Emergency Action Plan document, which he characterized as a document that instructed him what to do in case an employee was injured on the job. (*See* 88:14-24). Given Alaina Steele suffered grave bodily injury and death at the jobsite, the Emergency Action Plan is relevant to New River's response and whether or not it was negligent. *See Wiggins*, *supra*.

6. Finally, Mr. Phillips testified that there was a safety plan that was filed with ODOT that he received and reviewed prior to beginning the job at the New River Jobsite. According to Mr. Phillips, that document was prepared by the power company New River had been working for at the New River Jobsite. (*See* Phillips Dep. at 151:9 – 152:14). As the plan relates to jobsite and roadway safety, it is relevant to Plaintiff's negligence claim against New River. *See Wiggins*, *supra*.

New River's decision not to provide these documents, inarguably relevant to job site safety (discussion above) and negotiations involving choices New River made regarding safety (discussion below), is also a violation of customary practice in this Court, which envisions and encourages full and robust production of documents as part of the Rule 26 initial disclosure process. These are not the types of documents the disclosure of which the parties should be fighting about years into litigation, but rather they are the types of documents that should have been freely shared at the beginning of the case.

And if New River failed to maintain these records as it appears to suggest in some circumstances via its December 23 letter, it must be sanctioned with a spoliation finding because New River and its counsel were both immediately instructed to preserve evidence following Alaina Steele's death.

    2.  *New River must produce the negotiation emails.*

Here, there is simply no argument that these documents are irrelevant or that there is an undue burden. New River may simply search Ike Poe's emails with Wright employees, including the three expressly identified by Ms. Poloschan in her deposition—Tiffany Poloschan, Dave Abner, and Starr Jones. This is not an undue burden or disproportionate to the needs of the case in a case where a young woman lost her life. And New River is required to do electronic searches when it knows relevant documents exist that are kept in electronic form. *See*, *supra Casale*, 2014 U.S. Dist. LEXIS 203502, at *5; *Little*, 2013 U.S. Dist. LEXIS 22374, at *20; *Lynum*, 2016 U.S. Dist. LEXIS 112177, at *3. Courts require parties to conduct reasonable and careful searches when responding to discovery. *See id*.

New River's refusal to provide any communications with the Wright entities is unreasonable given that there is testimony that the documents exist and those documents are

16

reasonably identifiable documents easily searched and located. These communications inevitably relate to the decisions New River made with respect to the traffic control services it was willing to pay for. And those decisions may show that New River was negligent and a contributing cause to Alaina Steele's death. The communications are therefore relevant to Plaintiff's case and should be produced. *See Wiggins*, *supra*.

If New River failed to maintain these records as it appears to suggest in its December 23, 2020 letter, it must be sanctioned with a spoliation finding because New River and its counsel were both immediately instructed to preserve evidence following Alaina Steele's death.

> 3. *New River must provide proper responses to the sixty-one document requests.*

New River's form objection to sixty-one of the sixty-nine document requests is inadequate. New River claims two things: attorney client privilege/work product and that counsel for New River has responsive documents in his possession that he has not shared with New River, so those documents are not discoverable. (*See supra*, New River Response Nos. 1-25, 28-48, 54-60, 62-69).

First, if privilege or work product apply, New River must provide a privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A). And since it has failed to do so in a timely manner, any privilege it might have once asserted should be considered waived. *See JLJ Inc. v. Santas Best Craft, LLC*, No. 3:02-CV-513, 2004 U.S. Dist. LEXIS 31964, at *4 (S.D. Ohio May 28, 2004).

Second, documents in the hands of New River's counsel are documents in the hands of New River. A claim that those documents are protected because not in New River's physical control is unsupportable. Indeed, documents in the hands of counsel are deemed in the possession of the party, so if the documents are responsive to discovery requests, they must be

produced. *See In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) ("[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand."). The rule applies to documents in the hands of a party's attorney so long as the party has the right to ask for them and the attorney has a legal obligation to provide them. *See, e.g.*, *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 190 (S.D.N.Y. 2013) ("'Documents in the possession of a party's attorney may be considered to be within the control of the party,'" quoting 7 Moore's Federal Practice §34.14[2][c], at 34-80 (3d Ed. 2013)). As such, the Court should compel New River to provide proper responses.

        4.     *New River must be compelled to resume Mr. Phillips deposition.*

Courts generally permit second depositions on subjects that could not have been covered in the first. *See, e.g.*, *Flintkote Co. v. Gen. Accident Assurance Co. of Can.*, 692 F. Supp. 2d 1194, 1199 (N.D. Cal. 2010) (re-depositions permitted where new documents produced); *Collins v. lnt'l Dairy Queen*, 189 F.R.D. 496,498 (M.D. Ga. 1999) (re-deposition permitted on new allegations in amended complaint); *Christyv. Pa. Tpk. Comm'n*, 160 F.R.D. 51,53 (E.D. Pa. 1995) (re-deposition permitted for newly added defendants, only on topics not covered in first deposition); *Banana Distributors, Inc. v. United Fruit Co.*, 19 F.R.D. 244, 246-47 (S.D.N.Y. 1956) (permitting resumption of party's deposition after two-year suspension because party had failed to produce records, and then denying party's motion to terminate the deposition after it was discovered that additional records existed during the second deposition session).

Here, it would be manifestly unjust to permit New River to withhold documents relevant to Jobsite Safety in a case where a worker was injured and killed while working at the worksite. And it would be as unjust to allow New River to refuse production of those documents until after

18

New River employees familiar with the documents were deposed. Plaintiff specifically requested the New River documents identified above before Mr. Phillips' deposition and New River refused production. (*See* Exhibits 5 and 6). After that refusal (Exhibit 6), Mr. Phillips was deposed, and before his deposition was suspended, he testified that he was familiar with all six safety documents referenced above. *See supra*. Simply put, these relevant safety documents must be produced and Plaintiff must be permitted to depose New River employees with knowledge of them, including Mr. Phillips, because Plaintiff had no opportunity to cover these documents in Mr. Phillips' first deposition. *See Flintkote Co.* (and other cases cited *supra*).

IV. **CONCLUSION**

For the foregoing reasons, Plaintiff Thomas J. Bonasera Administrator of the E/O Alaina Nicole Steele, Deceased, respectfully requests that the Court issue an Order compelling Defendant New River Electrical Corp. to properly and fully respond to Plaintiff's discovery requests as set forth above. Plaintiff further requests that the Court issue an Order compelling New River to resume the deposition of Robert Phillips after it has made a proper production of documents, and that the Court issue an Order pursuant to Rule 37 awarding Plaintiff his reasonable costs incurred in preparing this Motion, including reasonable attorney's fees.

Respectfully submitted,

*/s/ Scott E. Smith*
Scott E. Smith (#0003749)
Trial Attorney
ses@sestriallaw.com
Michael L. Dillard, Jr. (#0083907)
mld@sestriallaw.com
**Scott Elliot Smith, L.P.A.**
5003 Horizons Drive, Suite 101
Columbus, OH 43220
Telephone: (614) 846-1700

                                          Facsimile: (614) 486-4987
                                          *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

On January 6, 2021, I electronically filed the foregoing on behalf of Plaintiff. Notice of this filing will be sent to counsel through the Court's ECF filing system. Parties may access this filing through the Court's system.

                                          */s/ Scott E. Smith*
                                          Scott E. Smith (#0003749)